*670 Dissenting Opinion by
Getty, J.,
which McDonald, J., joins.
Respectfully, I dissent.
I agree with the Majority that the circuit court did not err in granting the Grandparents’ motion for permissive intervention. However, I strongly disagree with the Majority’s holding that the trial court abused its discretion in finding that the biological parents were unfit and exceptional circumstances justified granting custody to the Grandparents.
Initially, the Petitioner, Ms. Burak, has failed to properly challenge the trial court’s finding of unfitness before this Court. As the Majority concedes, Ms. Burak, “did not independently appeal the unfitness issue decided by the Court of Special Appeals to this Court” in her petition for a writ of certiorari. Majority Op. at 623-24, 168 A.3d at 917-18. For that reason alone this Court should decline to consider her challenge to the trial court’s custody determination.
Instead, the Majority excuses Ms. Burak’s failure to properly raise the issue of unfitness on that grounds that the issue was raised and decided by both the tidal court and the Court of Special Appeals, that Ms. Burak “incorporated the argument into her argument regarding permissive intervention!;,]” and that both parties argued the issue in oral arguments before this Court. Id. In other words, the Majority suggests that when a party has failed to raise an issue in a petition for a writ of certiorari, the party can easily remedy that error by raising the issue in her brief to this Court or at oral argument before this Court. That is incorrect.
Maryland Rule 8-131 (b) provides, in pertinent part,
(1) Prior Appellate Decision. Unless otherwise provided by the order granting the writ of certiorari, in reviewing a decision rendered by the Court of Special Appeals or by a circuit court acting in an appellate capacity, the Court of Appeals ordinarily will consider only an issue that has been raised in the petition for certiorari or any cross-petition and that has been preserved for review by the Court of Appeals ....
*671 Thus, when a party fails to raise an issue in a petition for a writ of certiorari, this Court “ordinarily” will not consider it, regardless of whether it is later raised in a brief or at oral argument. As the use of the word “ordinarily” implies, this Court has the authority to decide issues not properly raised in a petition for a writ of certiorari. However, the Court has consistently held that it should exercise that authority rarely, only when there is a compelling reason of public policy or other justification to consider the issue. See Wynn v. State, 351 Md. 307, 322-23, 718 A.2d 588 (1998) (noting that the Court has not treated Rule 8-131 (b) as “granting a general discretion to reach an issue whenever the Court so desires in the interests of ‘fairness[,]’ ” and that “ ‘exceptions’ to the principle embodied in Rule 8-131 (b) are limited to ‘extraordinary circumstances’ ”); see also Mazor v. State Dep’t of Corr., 279 Md. 355, 371 n.8, 369 A.2d 82 (1977).
Here, there is no compelling reason to reach the unfitness claim. In Ross v. Hoffman, the Court set forth a clear standard for third-party custody claims, namely that there is a presumption that the child’s best interest is to remain in the custody of a biological parent that must be overcome by a showing of unfitness or “exceptional circumstances as make such custody detrimental to the best interest of the child.” 280 Md. 172, 178-79, 372 A.2d 582 (1977). The Court recently affirmed the propriety of that standard in McDermott v. Dougherty, an opinion that engaged in an exhaustive analysis of out-of-state cases applying the unfitness and exceptional circumstances standards. 385 Md. 320, 357-418, 869 A.2d 751 (2005). The Court expanded the use of that test to third-party visitation cases in Koshko v. Haining, 398 Md. 404, 441, 921 A.2d 171 (2007). And, the Court has clarified that in a custody case, “unfitness means unfitness to have custody of the child, not an unfitness to remain the child’s parent.” In re Adoption/Guardianship of Rashawn H., 402 Md. 477, 498, 937 A.2d 177 (2007). Thus, this Court has already set forth a clear standard for courts to apply in third-party custody cases. To the extent that trial courts may desire additional guidance as *672 to whether a particular parent is unfit, they may draw upon cases in out-of-state jurisdictions as persuasive authority.
Further, as clarified in Hoffman, a trial court need find only unfitness or exceptional circumstances in order to grant a third-party custody claim. 280 Md. at 178-79, 372 A.2d 582. Here, the trial court found both unfitness and exceptional circumstances, but Ms. Burak has failed to properly raise a challenge to the trial court’s unfitness finding. Consequently, this Court also need not address Ms. Burak’s claim that the trial court abused its discretion in finding that exceptional circumstances justified granting custody to the Grandparents. Instead, the Court should merely affirm the trial court’s grant of custody to the Grandparents on the basis of the unchallenged finding that Ms. Burak was not a fit parent to have custody of the child.
The Majority, apparently viewing the unfitness and exceptional circumstances prongs of the Hoffman test as insufficiently clear, sets forth new standards for both. The Majority enumerates, for the first time, a list of factors for a trial court to employ when determining whether a biological parent is unfit in a third-party custody action. Majority Op. at 635-46, 168 A.3d at 925-31. And, the Majority transforms the well-settled factor test for exceptional circumstances stated in Hoffman, 280 Md. at 191, 372 A.2d 582, by adding a new requirement that a trial court must find that a child has been away from his or parents for “a long period of time” in order to find that exceptional circumstances exist. Majority Op. at 659-60, 168 A.3d at 939. The Majority then concludes, unsurprisingly, that the trial court’s findings did not comport with the new legal standards that the Majority has just devised.
Initially, I disagree with the details of the new standards set forth by the Majority and believe that they are likely to prove confusing for trial courts to apply. There is significant overlap between the new factors that the Majority sets forth for unfitness and the already-extant factors described in Hoffman for exceptional circumstances. Compare Majority Op. at 644-45, 168 A.3d at 930 (listing, as two of six enumerated factors *673 for unfitness, “(1) the parent has neglected the child by manifesting such indifference to the child’s welfare that it reflects a lack of intent or an inability to discharge his or her parental duties” and “(2) the parent has abandoned the child”) with Hoffman, 280 Md. at 191, 372 A.2d 582 (listing, as two of seven enumerated factors for exceptional circumstances, “the intensity and genuineness of the parent’s desire to have the child” and “the length of time the child has been away from the biological parent”). This is particularly true as to the factor of parental abandonment; the Majority lists abandonment as a factor for unfitness, but also states that “the first Hoffman factor [for exceptional circumstances, i.e., “the length of time the child has been away from the biological parent”] seeks to determine whether a biological parent has, in effect, abandoned his or her child.” See Majority Op. at 644-45, 659-61, 168 A.3d at 930, 939-40.
The newly added overlap between the two standards blurs the lines between unfitness, which may well be found even when a parent is very involved in a child’s life, and exceptional circumstances, which generally occurs when a parent has abandoned as child or otherwise ceded the child’s care and upbringing to a third party. The Majority’s holding is thus likely to sow confusion as to what is required for a trial court to find unfitness as opposed to exceptional circumstances. And, the emphasis on abandonment under both prongs is likely to be applied—improperly—to deny custody to third parties when those parties have shown significant evidence indicating that the biological parent(s) is unfit or lacks a genuine desire to have the child, but the parent(s) has not outright abandoned the child.
The Majority is also unclear as to the mechanics of how, procedurally, a trial court should apply its new standards. The Majority correctly recognizes that third-party custody cases like the instant case, brought by the child’s grandparents, are distinct from third-party guardianship/termination of parental rights (TPR) cases brought by a county Department of Social Services. In a TPR case, a trial court is required to expressly consider certain statutorily enumerated factors in determining whether to terminate a parent’s rights to a child. See Majority *674 Op. at 628-29, 168 A.3d at 920-21; Maryland Code, Family Law § 5—323(d); see also In re Adoption/Guardianship of Rashawn H., 402 Md. at 501, 937 A.2d 177 (“The court’s role in TPR cases is to give the most careful consideration to the relevant statutory factors, to make specific findings based on the evidence with respect to each of them, and ... determine expressly whether those findings suffice either to show an unfitness on the part of the parent to remain in a parental relationship with the child or to constitute an exceptional circumstance that would make a continuation of the parental relationship detrimental to the best interest of the child.”) Consequently, instead of mandatory factors, the Majority lists factors for unfitness that a trial court “may consider[,]” and states that those factors “are not the exclusive criteria by which a court must rely to determine whether a parent is unfit[.]” Majority Op. at 644-46, 168 A.3d at 930-31 (emphasis added). However, the Majority also holds that its enumerated factors should “serve as a guide for the court in making its findings.” Id. at 645-46, 168 A.3d at 930-31. Thus, the Majority’s opinion leaves unclear whether, in a third-party custody action brought by a private citizen, the trial court must make explicit findings on the record or in a written opinion as to all of its stated factors for unfitness, as is required in the TPR context.
Similarly, the Majority has modified the Hoffman factor test for exceptional circumstances, adding a requirement that “[a trial] court must first determine that the child at issue has spent a long period of time away from his or her biological parent before considering the other Hoffman factors.” Id. at 662-63, 168 A.3d at 940-41. But it is unclear from the Majority’s opinion whether a trial court may find exceptional circumstances merely based on a finding of abandonment for a “long period of time” or if the court must also go on to make explicit findings as to the other Hoffman factors.
Furthermore, I strongly disagree with the Majority’s reversal of the trial court’s decision based on a new, retroactively applied legal standard. This kind of ex post facto overruling of a trial court’s decision based on entirely new legal criteria is highly improper. The Grandparents argued their claim for third-party custody, and the trial court conducted a custody *675 hearing, under the then-current legal standards for unfitness and exceptional circumstances. It is profoundly unfair to the Grandparents to reverse the grant of custody based on newly devised standards, without affording the Grandparents an opportunity to make their case under those new standards. And, by applying the new standards to the facts of the case, this Court usurps the trial court’s role to apply the law to the facts and make discretionary findings. Thus, at a minimum, if the Majority believes that new legal standards are necessary, the trial court’s ruling should be vacated, and the case remanded for that court to hold a third-party custody hearing applying the new standards. See Thompson v. State, 411 Md. 664, 683, 694, 985 A.2d 32 (2009) (holding that the correct legal standard in a postconviction DNA case where the petitioner requests a new trial is whether there is a “substantial possibility” that newly discovered evidence would have led to a different result, and remanding ease for the trial court to utilize that standard).
Finally, even if the Majority is correct to consider the merits of the trial court’s rulings instead of simply vacating the decision and remanding for the trial court to apply its new standards, I disagree with its conclusions that the trial court abused its discretion in finding that Ms. Burak was unfit and that exceptional circumstances merited granting custody to the Grandparents. The Majority correctly recognizes that in a child custody case a trial court’s factual findings are scrutinized under the clearly erroneous standard, and its ultimate conclusions reached by applying the law to those factual findings are reviewed under an abuse of discretion standard. Majority Op. at 613-15, 168 A.3d at 911-12 (citing In re Yve S., 373 Md. 551, 585-86, 819 A.2d 1030 (2003)). However, the Majority misapplies these standards, and has failed to afford proper deference to the decisions of the trial court.
As to unfitness, the Majority holds that because some of the trial court’s factual findings in support of the unfitness determination “were not supported by the evidence presented at the hearing” they were erroneous. Majority Op. at 650, 168 A.3d at 933. The Majority then proceeds through what is *676 functionally a de novo review of the evidence in the record. The Majority places different weight on some of that evidence than the trial court did, finds “very little” evidence to support certain of the trial court’s findings, and finds that other evidence should be discounted because it was based on testimony of Father and M that the trial court deemed credible but the Majority does not. Majority Op. at 647-56, 168 A.3d at 931-36.
However, as we have repeatedly held, “[i]f there is any competent evidence to support the factual findings of the trial court, those findings cannot be held to be clearly erroneous.” Spaw, LLC v. City of Annapolis, 452 Md. 314, 339, 156 A.3d 906 (2017) (emphasis added) (quoting Goff v. State, 387 Md. 327, 338, 875 A.2d 132 (2005)). And, in proceeding through the evidence in the record, the Majority is forced to concede that there was at least some evidence to support the trial court’s factual findings. Id. at 647-56, 168 A.3d at 931-36. Moreover, it is not the function of an appellate court reviewing for clear error to “substitute [its] judgment for that of the fact finder, even if [the Court] might have reached a different result.” Nicholson Air Servs., Inc. v. Bd. of Cty. Comm’rs, 120 Md.App. 47, 84, 706 A.2d 124 (1998). And in reviewing a trial court’s discretionary finding for clear error, this Court must give “due regard to the opportunity of the trial court to judge the credibility of the witnesses,” as commanded by Md. Rule 8-131(c). This Court has explained that this deference to a trial court’s credibility determination carries special force in child custody cases, where a trial judge “sees the witnesses and the parties, hears the testimony, and has the opportunity to speak with the child; he is in a far better position than is an appellate court, which has only a cold record before it, to weigh the evidence and determine what disposition will best promote the welfare of the minor.” In re Yve S., 373 Md. at 586, 819 A.2d 1030 (quoting Davis v. Davis, 280 Md. 119, 372 A.2d 231 (1977)). Thus, rather than engage in an improper weighing of the evidence and credibility of witnesses, the Court should simply hold that there was some evidence to support the trial court’s findings and, therefore, those findings were not clearly erroneous.
*677 The Majority also concludes that the trial court abused its discretion in applying the law to the facts and concluding from its factual findings that Ms. Burak was unfit to retain custody of the child. Id. at 647-48, 654-55, 168 A.8d at 931-32, 935-36. In contrast to the Majority’s view, I agree with the Court of Special Appeals that there was more than sufficient evidence in the record to sustain the trial court’s discretionary finding of unfitness:
On the actual record that was developed, the court acted well within its discretion when it found the parents unfit. The record supports the court’s finding that Wife still takes or is ready to take drugs and that she has struggled with parenting and properly caring for Child. The court heard and considered testimony regarding Wife’s inability and uneasiness in caring for Child, and that her difficulties often resulted in her and Husband placing Child in the Grandparents’ care. And the record revealed real questions about Wife’s compliance with the parties’ agreed drug testing regiment. She failed to comply with the Child’s Best Interest Attorney’s (“BIA”) request for a random drug test on July 14, 2014. And although she eventually sent the results of a test the BIA requested about a month before the custody merits hearing, she refused to sign the release that would allow her results to be sent directly to the BIA. This meant that Wife received and could review her results before the BIA got them, which undermined the credibility of any negative results. Wife obviously disputes these findings and the factual premises underlying them, but the record contained ample evidence that could support the court’s finding that she and Husband (who doesn’t contest the finding) were unfit parents.
Burak v. Burak, 231 Md.App. 242, 269, 150 A.3d 360 (2016).
The Majority similarly misapplies the clearly erroneous and abuse of discretion standards as to the trial court’s findings regarding exceptional circumstances. The Majority again takes issue with how the trial court weighed certain evidence as to how long the child was away from the parents during their frequent episodes of drug use, when the Grandparents assumed care for the child, and “the stability and certainty as to *678 the child’s future in the custody of the parent.” Majority Op. at 659, 168 A.3d at 939 (quoting Hoffman, 280 Md. at 191, 372 A.2d 582). And, the Majority concludes that the trial court abused its discretion in determining that exceptional circumstances merited granting custody to the Grandparents, Id. at 663-64, 168 A.3d at 941.I would instead adopt the reasoning of the Court of Special Appeals and hold that there were more than sufficient facts in evidence to support a finding of exceptional circumstances under the applicable Hoffman factors:
The record also supports the court’s finding of exceptional circumstances. The evidence and testimony demonstrated that Child had been exposed for years to a volatile and unhealthy home environment; the court cited “the drugs, the sex, the craziness in the house, the different relationships, the lack of interest in the mother, the mother lying— all of those things are factors for both [unfitness and exceptional circumstances].” The Child spent long periods of time away from Husband and Wife, especially when Husband and Wife used drugs. The court found that the Grandparents had provided a great deal of care for the Child, and that “the age of the child when the care was assumed by the third party ... was from the time of birth.” The court considered the possible emotional effect on the child in a change of custody, the period of time that elapsed before the parents sought to reclaim him, the nature and strength of the ties between Child and the Grandparents, and found all factors to strongly favor custody by the Grandparents. The court did not find Wife’s stated desire for custody to be genuine, and that Child “would continue with instability and he would certainly fail” in the custody of his parents.
Burak, 231 Md.App. at 269-70, 150 A.3d 360.
In summary, this Court should hold that Ms. Burak has failed to properly preserve her claim that the trial court erred in finding her to be unfit to have custody of her child because she did not raise it in her petition for a writ of certiorari. And, because a third-party custody claim requires only a finding of unfitness or exceptional circumstances, it is not necessary for the Court to reach Ms. Burak’s claim that the trial court *679 abused its discretion as to its finding of exceptional circumstances. Instead, the Court should sustain the trial court’s custody decision on the unchallenged ground of unfitness.
Moreover, the overlap between the new factors set forth by the Majority for unfitness and the Hoffman exceptional circumstances factors is likely to prove confusing. The Majority has also failed to clarify whether it intends for trial courts to explicitly consider all of the factors it has enumerated. Further, even if the Court feels it necessary to supply new standards for unfitness and exceptional circumstances, it should vacate and remand the case to afford the Grandparents the opportunity to argue their case under the newly announced standards. Finally, even if it were appropriate to review the trial court’s findings under the newly announced standards, the trial court did not abuse its discretion in finding that Ms. Burak was an unfit parent or in finding that exceptional circumstances merited granting custody to the Grandparents.[1] Therefore, I respectfully dissent.
Judge McDonald has authorized me to state that he joins this dissent.

. The Majority also concludes that because of its holding that the circuit court abused its discretion in granting custody of the Child to the Grandparents, "the circuit court erred in ordering Petitioner to pay child support to the Grandparents.” Majority Op. at 667, 168 A.3d at 943. I would instead affirm the Court of Special Appeals’ holding that affirmed the trial court’s child support rulings. See Burak, 231 Md.App. at 280-84, 150 A.3d 360.